UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>BRETT C. HENDERSON,<br><br>    Defendant. | Case No. 4:08-cr-00292-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendant Brett C. Henderson's Motion for Early Termination of Supervised Release (Dkt. 153). The Government opposes the motion (Dkt. 157). For the reasons below, the Court grants the motion.

## I.   BACKGROUND

On September 26, 2009, Henderson signed a plea agreement in exchange for the United States dismissing charges against him and making certain recommendations to the Court (Dkt. 91 at 2). As part of this agreement, Henderson admitted the following facts:

On October 15, 2008, Henderson was in possession of five or more grams of methamphetamine and intended to distribute it to others (*id.* at 2-3). The same day, Henderson provided methamphetamine to two individuals who subsequently distributed it further (*id.* at 3-4).

Henderson has a history of criminal activity that includes fleeing from a vehicular manslaughter in 1999, domestic violence in 2005 and 2007, and violating no-contact orders in 2005 and 2007 (PSR ¶¶ 49, 51, 53, 55, 61, 63).

**MEMORANDUM DECISION AND ORDER - 1**

On February 9, 2010, Henderson was sentenced to 150 months to be followed by 10 years of supervised release and a fine of $3,000 (Dkt. 111). His term of imprisonment was later reduced to 127 months pursuant to 18 U.S.C. § 3582(c)(2), after a retroactive reduction in the sentencing guidelines (Dkt. 136).

Henderson was released in November 2018 and has been serving his term of supervised release since that time (Dkt. 153 at 4). Henderson has had no violations in the last eight years and has approximately three and a half years remaining of his original ten-year term of supervised release (*id.* at 3). Until recently, Henderson has been on his supervising officer's administrative caseload (*id.* at 4). Henderson's supervising officer supports the early termination (*id.*).

Henderson has a fiancé and son with whom he lives (*id.* at 5). Henderson works for PepsiCo in a leadership role and has been recognized for excellent performance in that role (*id.* at 4-5). He has expressed that it is difficult for him to find work and advance in his career while under supervision due to the attitudes of employers (*id.* at 5).

On December 10, 2024, one day after Henderson filed the present motion, his supervising officer, Hailey Baker, notified counsel that his fiancé obtained a three-day protective order against Henderson in response to threatening behavior; it expired and was not renewed (Dkt. 157 at 1-2). This order caused Henderson to return to his supervising officer's regular caseload for the first time since June 2023 (Dkt. 157 at 2; Dkt. 153 at 4). This incident was sparked by an argument between Henderson and his fiancé's mother, who lived with them at the time, but has since moved out (Dkt. 157 at 2). Henderson has since voluntarily initiated counseling (*id.*). Officer Baker investigated the incident and concluded that there was no danger to the fiancé and continues to fully support Henderson's early termination (*id.* at 2-3). Officer Baker expects to return Henderson

to the administrative caseload in the "near future" (*id.* at 2).[1] Officer Baker also notes that while Henderson was sentenced to ten years of supervision, most similarly situated defendants now receive five years of supervision (*id.* at 3).

## II. LEGAL STANDARD

The Court wields a wide range of discretion when determining whether to grant early termination of supervised release. *See* 18 U.S.C. § 3583(e)(1); *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014). In order to grant a motion for the early termination of supervised release, a court must find that such termination is warranted by the conduct of the defendant and in the interest of justice. 18 U.S.C. § 3583(e)(1). The Court may consider whether to grant early termination after a defendant has served at least one year of the term of supervised release. *Id*. In considering granting a motion for early termination of supervised release, a court must review several factors, including:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) Deterrence;

(3) Protection of the public;

(4) The need to provide the defendant with educational, vocational training, medical care, or other rehabilitation;

(5) The sentence and sentencing range established for the category of defendant;

---

[1] The Court has not received any further information regarding Mr. Henderson's performance or whether he is currently on the administrative or regular caseload. In this context, the Court interprets silence as satisfactory performance by Henderson. Additionally, the Court places little weight on whether Mr. Henderson is currently on Officer Baker's administrative or regular caseload; Officer Baker supports termination.

(6) Any pertinent policy statement by the Sentencing Commission;[2]

(7) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(8) The need to provide restitution to any victims of the offense.

*United States v. Hutchings*, No. 4:23-CR-00095-BLW, 2025 WL 1266108, at *1 (D. Idaho May 1, 2025). After considering these factors, a court may grant early termination if it is "warranted by the conduct of the defendant and the interest of justice." 18 U.S.C. § 3583(e)(1). The Ninth Circuit has considered and rejected requirements of undue hardship or exceptional behavior as a predicate for granting early termination of supervised release. *United States v. Ponce*, 22 F.4th 1045, 1047 (9th Cir. 2022). The Court must provide an explanation of its holding but need not elaborate unnecessarily or "tick off each of the § 3553(a) factors to show that it has considered them." *Emmett*, 749 F.3d at 821-22.

### III.  ANALYSIS

Henderson moves to terminate his supervised release approximately three and half years early (Dkt. 153). This request is his second; the first was denied in August of 2021 (Dkt. 145). In deciding such a matter, the court considers eight sentencing factors. 18 U.S.C. § 3583(e)(1).

Per the plea agreement, Henderson admitted to the distribution of five or more grams of methamphetamine (Dkt. 49). He was held accountable for 11.9 grams of methamphetamine found in his hotel room and 2.51 grams that were found on an individual accompanying Henderson (PSR ¶ 20). This crime is considered severe and dangerous. *See* 21 U.S.C. § 841(b)(1)(B). Additionally, Henderson has a noteworthy criminal history that includes several instances where he disregarded

---

[2]  The Court is aware of none here.

**MEMORANDUM DECISION AND ORDER - 4**

the law and the orders of the courts (PSR ¶¶ 36-65). The nature of the criminal conduct weighs against granting an early termination.

Henderson appears to have changed his attitude extensively, however (Dkt. 157 at 2). Defendant has complied with the requirements of his supervision largely without issue (*id.*) and shown substantial personal development by recognizing his own problematic behavior when it occurs (*see* Dkt. 157 at 2; Dkt. 153 at 4-5, Exs. B-C) (noting counseling). Henderson complied with the recent no-contact order; historically, this was not true (Dkt. 153 at 3-4), and upon its expiration, was invited back into the house. Henderson has also demonstrated leadership characteristics and workplace involvement consistent with a positive, law-abiding place in the community (Dkt. 153 Ex. B). Henderson's willingness to comply with the law, recognize and address problematic behavior, as well as his newfound place in the community, weighs in favor of granting an early termination.

Henderson was imprisoned for approximately eight and a half years and has been on supervised release for approximately six and half years (Dkt. 153 at 3). As Officer Baker notes, "it is it is hard for a supervisee to get through supervision with no violations, but the Defendant has had none" (Dkt. 157 at 2). The fact that Defendant has no violations and has behaved lawfully since his release is indicative of successful specific deterrence.

While the sentencing guidelines do not state a maximum length for the term of supervised release, the required minimum length is four years; the minimum is eight if a defendant has prior convictions of serious drug felonies or "serious violent felonies." 21 U.S.C. § 841(b)(1)(B). "Serious violent felony" is defined in 18 U.S.C. § 3559(c)(2)(F)(ii) as an "offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the . . . use of physical

force against the person of another or . . . involves a substantial risk that physical force against the person of another may be used . . . ." 18 U.S.C. § 3559(c)(2)(F)(ii). Henderson only had one prior felony conviction (PSR ¶¶ 36-65). Twenty-six years ago, Henderson was sentenced to five years of imprisonment for vehicular manslaughter and leaving the scene of the crime (PSR ¶ 49). This offense has a maximum term of imprisonment of five years. Idaho Code § 18-8007. As this prior conviction does not meet the required minimum of ten years, this offense is not, for the purposes § 841(b)(1)(B), a serious violent felony. Henderson has no prior convictions for the purposes of § 841(b)(1)(B). Officer Baker notes that, currently, similarly situated defendants often receive five years of supervision (Dkt. 157 at 3). Henderson received ten years and has served over six years (Dkt. 153 at 2-3). General deterrence, then, is not further served by requiring Henderson to complete his supervised release. Moreover, doing so would raise the specter of disparate results given the disparity between the length of supervised release Henderson received and what a defendant today would be likely to receive. These factors weigh in favor of granting early termination.

Henderson appears to be receiving training from his current employer while he is still supervised (*id.* at 4-5). The Court, however, considers "the *need* for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2) (emphasis added). Thus, while Henderson claims that it is difficult to find further employment due to his supervised status (Dkt. 153 at 5), he is currently receiving job training and there appears to be no *need* for supervised release to encourage Henderson's vocational training. This factor favors granting early

**MEMORANDUM DECISION AND ORDER - 6**

termination. Henderson was not ordered to pay any restitution (Dkt. 111). This factor also weighs in favor of granting early termination.

The Government opposes Henderson's early termination because of the recent events that resulted in a three-day protective order against Henderson and his removal from Officer Baker's administrative caseload (Dkt. 157). This incident is concerning to the Court. Henderson's criminal history includes domestic violence, and a return to that behavior undercuts an otherwise spot-free performance. Officer Baker, however, investigated the incident and did not see fit to issue a violation (*id.* at 2-3). The Court will not second-guess Officer Baker's supervision decisions; she actively supervised Henderson for years and then monitored him "administratively" as well.

Furthermore, Henderson has voluntarily sought counseling since the incident and has removed the exacerbating individual from the situation (*id.*). When the protective order was issued against Henderson, he complied for the duration (*id.* at 3), deviating further from his criminal history as previously noted (PSR ¶¶ 53, 55, 63). Henderson's fiancé and Officer Baker do not believe that he presents a danger to either the fiancé or the public (Dkt. 157 at 2-3). While the Government's concerns are understandable, in light of the differences in circumstances between Henderson's past convictions (PSR ¶ 75) and the recent events (Dkt. 157), the investigations conducted by Officer Baker (*id.* at 2-3), and voluntary willingness of the Defendant to remedy these issues (*id.* at 2), the Court credits Mr. Henderson's position.

The Court finds that Henderson's consistently lawful conduct since his release, his reintegration into society, the disparity in his supervision length compared to similar offenders, and his conduct warrant the early termination of his supervised release.

### IV.   ORDER

**IT IS ORDERED that:**

1. Defendant Brett C. Henderson's Motion for Early Termination of Supervised Release (Dkt. 153) is **GRANTED**. The Court hereby **TERMINATES** the term of supervised release in this case and discharges Defendant Henderson.

DATED: July 28, 2025

Amanda K. Brailsford
U.S. District Court Judge